UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PAMELA SILER,

   Plaintiff,     CIVIL ACTION NO. 07-10355

  v.         DISTRICT JUDGE LAWRENCE P. ZATKOFF

COMMISSIONER OF     MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

   Defendant.
_____/

## REPORT AND RECOMMENDATION

## I.  Introduction

   This Social Security case comes before the court on the parties' cross-motions for

summary judgment.  For the reasons stated below, the court recommends that the

Commissioner's motion be **DENIED**, and that plaintiff's motion be **GRANTED** and this case

**REMANDED** to the Commissioner

## II.  Background

   Plaintiff filed an application for Supplemental Security Income (SSI) on October 27,

2003, and she filed an application for Social Security Disability Insurance Benefits (DIB) on

December 1, 2003, with a protective filing date of October 27, 2003, alleging that she was

disabled due to arthritis in her joints, asthma, depression, and pain in her legs and lower back,

with a disability onset date of June 12, 2001. (Tr. 18, 63, 124, 529-530)[1] Plaintiff completed

school through the tenth grade and trained as a rehabilitation assistant, and she has a work

history including employment as a cashier, cook, assembly line worker, factory worker, and

nurses' aid. (Tr. 91, 128)

The Social Security Administration (SSA) denied plaintiff's claim on June 15, 2004. (Tr.

36-40, 543-546) Plaintiff then requested a hearing before an administrative law judge (ALJ).

(Tr. 43) The hearing was held on July 17, 2006, before ALJ Charles Reite. Plaintiff was

represented by counsel and testified at the hearing. (Tr. 547-586)

On September 22, 2006, the ALJ issued a decision denying plaintiff's claim. (Tr. 15-26)

The ALJ determined that plaintiff had the following impairments: "lumbar degenerative disc

disease, status post laminectomy in January 2004; depression; and possible cocaine use." (Tr.

25) The ALJ also determined that plaintiff's impairments were "severe" within the meaning of

20 C.F.R. § 404.1520(a)(4)(ii), but that she did not have an impairment that met or equaled any

of the impairments listed in Appendix 1, Subpart P of the Social Security regulations. (Tr. 25)

The ALJ further determined that plaintiff retains the residual functional capacity (RFC) for "light

work with a sit/stand option and mild limitation in concentration, persistence and pace and social

interaction" (Tr. 25), and that plaintiff is unable to perform her past relevant work. (Tr. 25)

Considering plaintiff's age, education, past work and RFC, as well as the testimony of the

---

[1]Plaintiff had previously applied for DIB and SSI on January 16, 2003, with a protective
filing date of December 30, 2002, alleging disability since October 20, 2000, due to arthritis,
carpal tunnel syndrome, asthma, loss of balance and depression. That claim was denied on June
12, 2003 and plaintiff did not appeal. (Tr. 18, 31, 59, 521, 524.)

vocational expert and the framework of Rule 202.18, the ALJ found that plaintiff is able to perform other work that exists in significant numbers in the regional and national economies. (Tr. 25)  Accordingly, the ALJ found that plaintiff was not under a disability as defined by the Social Security Act.  (Tr. 25)  Plaintiff was 46 years-old (a younger individual) at the time of the ALJ's decision.  (Tr. 19)

Plaintiff  filed a request for review of the ALJ's decision with the SSA's Appeals Council.  (Tr. 10)  The Council denied the request on December 28, 2006.  (Tr. 5-7)  The ALJ's decision thus became the final determination of the Commissioner.

On January 23, 2007, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  As indicated above, the matter comes before the court on the parties' cross-motions for summary judgment.  Plaintiff contends that the ALJ's ruling was not based on substantial evidence because the ALJ formed an inaccurate hypothetical question and failed to explain why it rejected the opinions of certain examining physicians.  The Commissioner contends that the disability determination is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C. §

1382c(a)(3)(A).  See also 42 U.S.C. § 423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if
> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B).  See also 42 U.S.C. § 423(d)(2)(A).  The claimant bears of the

burden of proving that he is disabled.  Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate both DIB and SSI claims.  20 C.F.R. §§ 404.1520,

416.920.  In Foster, Id. at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial
> gainful activity.  Next the claimant must demonstrate that she has a
> "severe impairment."  A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment."  If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she
> is incapable of performing work that she has done in the past.
> Finally, if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity
> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.

**B.  Standard of Review**

-4-

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[T]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV. Analysis

At the hearing, the ALJ posed a hypothetical question to the VE regarding the ability of an individual of plaintiff's age, education, work experience, and RFC to engage in substantial gainful activity. Specifically, the ALJ asked the VE to assume that the person:

> would be the same age, education, background, experience as [plaintiff] and this is at all times going to be someone that's a younger person under 50 years of age. We'll assume that they have a light level of exceptional [sic] capacity. They require a sit,

stand kind of option.  In other words the opportunity to change
position to maintain the comfort level, not necessarily have to
leave the workstation but at least be able to adjust her position.
We'll assume that this individual would also have a mild level of
concentration, pace and persistence limit or impairment.  And to
quantify that a bit, if you assume the best employee you can
imagine would be able to be on task concentration, pace and
persistence 100% of the work time.  We'll assume if you've got
the mild limitation you'd only be able to do about 85% of what this
employee of the year would be able to maintain.  [Tr. 579]

In response to the hypothetical, the VE testified that, while such a person could not perform

plaintiff's past relevant work, she could work as a general office clerk, machine operator,

inspector, or a security guard.  Such a person could also work at an assembly job.  The VE

further testified that approximately 823,000 such jobs existed in the national, and approximately

20,400 machine operator, inspector and security guard jobs existed in the regional economy.

(Tr. 579-580)  Based on that testimony, the ALJ concluded that plaintiff was not disabled.

Where an ALJ poses a hypothetical question to a VE that fully and accurately

incorporates a claimant's physical and mental limitations, and the VE testifies that a person with

such limitations is capable of performing a significant number of jobs in the national economy,

such testimony is sufficient to support a finding that the claimant is not disabled.  Varley v.

Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).  Conversely, where

the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's

testimony cannot support such a finding.  The ALJ is not required to specifically refer to a

claimant's medical conditions in the hypothetical.  Webb v. Commissioner of Social Security,

368 F.3d 629 (6th Cir. 2004).  Further, the ALJ is not required to include in a hypothetical

unsubstantiated allegations and complaints.  The hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence."  Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002).

In this case, plaintiff argues that the hypothetical was inaccurate because it failed to accurately incorporate all of her mental limitations.  Plaintiff's argument that the hypothetical was inaccurate is entirely dependent on her arguments that the ALJ failed to explain his treatment of non-examining medical sources and failed to include plaintiff's moderate difficulties in maintaining concentration.

Plaintiff argues that the ALJ failed to properly explain his decision not to accept the findings of the state doctors regarding plaintiff's moderate difficulties in maintaining concentration, persistence, or pace.  A failure to fully discuss the medical basis for the hypothetical question and why he rejected certain opinions is grounds to remand this matter because it impedes meaningful review by this court.  See, e.g., Hurst v. Secretary of Health and Human Services, 753 F.2d 517 (6th Cir. 1985)(articulation of reasons for disability decision essential to meaningful appellate review); see also Bailey v. Commissioner of Social Security, 1999 WL 96920 at **4 (6th Cir.(Ohio))("Thus, an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes"); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

In this case, plaintiff relies on the opinions of two state physicians.  On June 2, 2003, John S. Pai, M.D., examined plaintiff and filled out a Psychiatric Review Technique and Mental

Residual Functional Capacity Assessment with regard to plaintiff. (Tr. 212-221) Dr. Pai found that plaintiff had an affective disorder and noted plaintiff's treatment for depression, hallucinations, and suicidal thoughts. (Tr. 212, 216) Dr. Pai also found that plaintiff had moderate limitations in maintaining social functioning, and in maintaining concentration, persistence, or pace. (Tr. 215) Dr. Pai further found that plaintiff was moderately limited in her ability to (1) maintain attention and concentration for extended periods, (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (4) interact appropriately with the general public, (5) respond appropriately to changes in the work setting, and (5) set realistic goals or make plans independently of others. (Tr. 218-219) Additionally, Dr. Pai found that plaintiff was markedly limited in her ability to carry out detailed instructions. (Tr. 218) With regard to plaintiff's functional capacity, Dr. Pai concluded that plaintiff was capable of doing unskilled work and that her statements were partially credible. (Tr. 220)

On June 11, 2004, Dr. Julia Crouther, a state agency psychologist, examined plaintiff and filled out a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment with regard to plaintiff. (Tr. 278-285) In the Psychiatric Review Technique, Dr. Crouther found that plaintiff had an anxiety-related disorder, somatoform disorder, and moderate difficulties maintaining concentration, persistence or pace. (Tr. 278-279) Dr. Crouther also noted that plaintiff cannot perform complex tasks, but she did retain the ability to do unskilled work within

her physical capacity on a sustained basis. (Tr. 281) In the mental RFC assessment, Dr. Crouther found the plaintiff was moderately limited in her ability to carry out detailed instructions and her ability to maintain attention and concentration for extended periods. (Tr. 282) In the "Functional Capacity Assessment" portion of the mental RFC assessment, Dr. Crouther found that, while plaintiff cannot do complex or technical tasks, she does retain the ability to do unskilled work within her physical capacity on a sustained basis. (Tr. 284)

As noted above, the hypothetical question involved a person with a light level exertional capacity and a mild impairment of concentration, persistence and pace, and who requires a sit/stand option. The hypothetical question also described a mild limitation as 85% of what the best employee imaginable or an employee of the year is able to maintain. Given the findings discussed above, the hypothetical question expressly differs from Dr. Pai and Dr. Crouther's opinions in two areas; whether plaintiff was limited to unskilled work and whether she had mild or moderate limitations in concentration, persistence, or pace.

Plaintiff argues that the ALJ's decision was insufficient because the ALJ only briefly mentioned the opinions of Drs. Pai and Crouther. Specifically, the ALJ wrote that "[t]he state agency found that [plaintiff] has the RFC for light unskilled work (Exhibits 2F, 10F, 12F-15F, 3F-5F). I agree with the state agency that [plaintiff] is not disabled. However, I find that she has the above RFC. The state agency did not have the benefit of the updated evidence and the testimony of [plaintiff] and the vocational expert." (Tr. 24) Viewing the ALJ's opinion as a whole, plaintiff is incorrect to argue that the ALJ relied solely on the above statements as an explanation for rejecting the opinions of Dr. Pai and Dr. Crouther. The statements reference

other portions of the ALJ's opinion and those portions of the opinion clearly describe the ALJ's view of plaintiff's mental health treatment following the last time a state agent evaluated her (Tr. 23), the ALJ's finding regarding plaintiff's testimony and credibility (Tr. 23-24), and the ALJ's view of the vocational expert's testimony (Tr. 24).

Nevertheless, while plaintiff is incorrect in arguing that the ALJ merely relied on a brief statement as an explanation, plaintiff is correct in arguing that this case should be remanded. For the reasons discussed below, the portions of the ALJ's opinion describing the updated evidence, plaintiff's testimony, and the vocational expert's testimony failed to adequately explain its reasoning regarding plaintiff's limitations in the area of concentration, persistence or pace.

The ALJ first noted that the state agency physicians did not have the evidence of plaintiff's later medical treatment when they formed their opinions. Specifically, the ALJ noted that plaintiff had two psychiatric inpatient hospitalizations at White Pine Inpatient in June 2004 and May 2005, and that she was stabilized and controlled with medications both times. (Tr. 23) The ALJ also found that plaintiff only has sporadic episodes when she goes off her medication and when she does not follow up with outpatient treatment. (Tr. 23) The ALJ further noted that plaintiff's mental symptoms did not last for twelve months and there was no evidence of any psychological treatment or evaluation since plaintiff's discharge in May 2005. (Tr. 23)

The reports discussed by the ALJ are found in the administrative record. On June 24, 2004, plaintiff was admitted to the hospital via the emergency room and on referral from Saginaw County Mental Health Center, complaining of stress, nervousness, lack of sleep, and thoughts of suicide. (Tr. 301, 328) The admitting diagnosis was "major depression recurrent."

(Tr. 301)  Plaintiff also tested positive for cocaine.  (Tr. 302)  During her stay in the hospital, plaintiff was closely observed, examined and given medications.  (Tr. 301-302, 311-315, 319-323, 353-354)  Plaintiff also underwent psychological treatment.  (Tr. 367-374)  According to a Dr. Rao's report, plaintiff did very well with the medications and she slept better, had no suicidal ideation, gained good insight, and was able to deal with her chronic pain and other social problems.  (Tr. 302)  According to Dr. Rao, "[a]s the patient was stable, free of suicidal thoughts, willing to take medications and following through on an outpatient basis," she was discharged on June 29, 2004.  (Tr. 302)

On May 24, 2005, plaintiff was again admitted to the hospital for depression.  (Tr. 424-425, 450)  She also reported auditory hallucinations and suicidal thoughts.  (Tr. 427, 450)  Prior to that, plaintiff had stopped taking her medication.  (Tr. 423, 450)  At the hospital, plaintiff's doctor found that she required continuous supervision and observation, as well as a therapy plan.  (Tr. 428)  Plaintiff was also placed back on her medications and she showed good progress.  (Tr. 450-454)  Plaintiff was discharged from the hospital on May 27, 2005.  (Tr. 450)

Despite the ALJ's reliance on the hospital visits, the visits have little relation to the limitation found in the hypothetical question with regard to concentration, persistence, or pace. The hospital visits involved treatment for plaintiff's depression and suicidal thoughts, and not her capacity to work or any specific limitations she has.  Similarly, the ALJ's finding that plaintiff's mental symptoms did not appear to have lasted twelve months appears to solely relate to plaintiff's depression.  Plaintiff was treated and, after counseling and medication, eventually found to be stable, but the ALJ failed to explain in its opinion how that successful treatment for

depression and suicidal thoughts provides support for its findings that plaintiff only had a mild limitation in concentration, persistence or pace, and that she was only able to maintain about 85% of what an employee of the year could maintain.

Considering plaintiff's testimony and credibility, the ALJ found that plaintiff "has medically determinable impairments that could reasonably be expected to produce her pain and other symptoms" but that "the medical evidence does not support a finding that she is precluded from all work." (Tr. 23) The ALJ also found plaintiff's complaints not fully credible and that she overstated her limits and pain. (Tr. 23) According to the ALJ, it based its credibility determination on lack of objective evidence supporting plaintiff's complaints, plaintiff's fairly extensive daily activities, and her noncompliance with prescribed medical treatment. (Tr. 23) The ALJ also noted that there was a real question of cocaine use in plaintiff's case and that, while she claimed to be unable to maintain her grooming and hygiene, she appeared to be well-dressed and coiffed at the hearing and her responses were coherent and appropriate. (Tr. 23-24)

The portion of the ALJ's opinion addressing plaintiff's testimony and credibility provides little support for the ALJ's finding regarding concentration, persistence, or pace. Plaintiff's testimony mainly involves her physical complaints and only briefly mentions problems with attention and confusion. (Tr. 572-573) The ALJ's opinion only makes broad statements about plaintiff's credibility and, while the ALJ states reasons, it is not clear which, if any, of those reasons apply to plaintiff's concentration, persistence, or pace.

In addition to the updated evidence and plaintiff's testimony, the ALJ also expressed reliance on the vocational expert's testimony in making the RFC determination and in rejecting the state physicians' opinions. However, the ALJ fails to articulate how a vocational expert's testimony in response to a hypothetical questions provides support for the RFC underlying that question.

In the opinion, the ALJ noted a general rejection of the non-examining physicians' opinions of Dr. Pai and Dr. Crouther, but did not specifically discuss the area of concentration, persistence, or pace. To the extent the opinion addresses that limitation, the ALJ failed to explain how the evidence cited supports the rejection of the non-examining physicians' opinions. Additionally, even if the ALJ had discussed rejection of the opinions, the ALJ failed to explain any basis for finding that plaintiff had a mild limitation in the area of concentration, persistence or pace that limits her to 85% of what an employee of the year can do.

In light of the above findings, the court is presented with the question of whether this matter should be remanded for further proceedings, or whether a judicial award of benefits is warranted. In <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171, 176 (6th Cir. 1994), the Sixth Circuit stated the following:

> If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. . . . A judicial award of benefits is proper only where the proof of disability is strong and evidence to the contrary is lacking.

In this case, all essential factual issues have not been resolved as questions remain regarding plaintiff's impairments in the area of concentration, persistence or pace, and the effect of any such impairment. Plaintiff argues that she had a moderate limitation in that area and that a moderate limitation is a 50% impairment. Plaintiff also notes that the vocational expert testified that an employee would need to stay on pace or focus at least 70% of the time in order to maintain competitive employment (Tr. 583), which she contends she cannot do. However, the vocational expert testified, in response to a hypothetical question related to a person having moderate limitations in concentration, persistence or pace. The VE stated that such a person could work at a reduced number of jobs; 4,300 regional and 100,000 general office clerk positions, 7,000 regional and 200,000 national assembly positions, and 4,000 regional and 160,000 national machine operator positions. (Tr. 582) In that later hypothetical, the ALJ defined a moderate limitation in concentration, persistence or pace as 66% of what an employee of the year would be able to maintain. (Tr. 581)

While plaintiff cites to some evidence supporting her contention that she has a moderate limitation in concentration, persistence or pace, it remains unclear, given the ALJ's failure to adequately address the issue, what level of impairment plaintiff has in the areas of concentration, persistence or pace. Moreover, it is also unclear what the effect of such an impairment would be on plaintiff's ability to work and with respect to the number of jobs plaintiff can perform. Given those questions, this court cannot say on the record before it that the evidence conclusively establishes that plaintiff is unable engage in substantial gainful activity. Thus, an immediate award of benefits by the district court is not warranted.

## V.  Conclusion

For the reasons stated above, the court finds that the ALJ's decision is not supported by substantial evidence.  Further, the court finds, that the record does not support a judicial award of disability benefits.  Accordingly, the court recommends that the Commissioner's motion for summary judgment be **DENIED**, that plaintiff's cross-motion for summary judgment be **GRANTED**, and that this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

The ALJ shall propound a hypothetical consistent with the limitations of the claimant the ALJ accepts as credible.  The ALJ is also to explain the basis for rejecting some medical opinions and accepting others, as well as the basis for some percentage of function attributed to plaintiff.  If deemed necessary, a medical advisor may also offer testimony.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge


Dated: October 25, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on October 25, 2007.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan